IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**IAN ANDRE CARR,**
      Petitioner,

v.

**UNITED STATES OF AMERICA,**
      Respondent.

**CIVIL ACTION NO.: 3:22-CV-207**
**CRIMINAL ACTION NO.: 3:20-CR-43-1**
**(Groh)**

### REPORT AND RECOMMENDATION

#### I.  INTRODUCTION

On December 6, 2022, pro se Petitioner, Ian Andre Carr ("Petitioner") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 98.[1] Following the issuance of a notice of deficient pleading, Petitioner re-filed his Motion on January 25, 2023, using the court-approved form. ECF No. 104. Because Petitioner's claims of ineffective assistance of counsel are without merit, the undersigned recommends that the Motion to Vacate, Set Aside, or Correct Sentence be DENIED and DISMISSED WITH PREJUDICE.

#### II.  FACTUAL AND PROCEDURAL HISTORY

**A.  Petitioner's Conviction and Sentence**

On November 17, 2020, Petitioner was indicted and charged with seven counts related to the distribution of Fentanyl and Heroin. ECF No. 1. Pursuant to a plea agreement reached with the Government, Petitioner entered a guilty plea on September

---

[1] All CM/ECF references refer to Criminal Action No. 3:20-cr-43-1.

21, 2021[2], to Count Eight of the Indictment, Distribution of Fentanyl and Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) in exchange for the dismissal of the remaining counts against him. ECF Nos. 68, 69. Count Eight had a maximum penalty of twenty years imprisonment, a fine of $1,000,000, and a term of at least three years of supervised release. Id. at 1.[3]

The Presentence Investigation Report ("PSR") established a guideline imprisonment term of 151 to 188 months based on a total offense level of 29 and a criminal history category of VI. ECF No. 83 at 10, 24. The career offender enhancement was applied under the Guidelines, with the PSR noting at least two predicate offenses: (1) a federal Distribution of Cocaine Base conviction from 2000 in the Northern District of West Virginia 3:99-CR-33[4], and a West Virginia state conviction of Unlawful Wounding from 2005 in Berkeley County, West Virginia Circuit Court case number 04-F-42.[5] Id. at 8, 10, 13, 15. Petitioner filed an objection to the PSR, stating that Petitioner's prior conviction on March 27, 2000, for Distribution of Cocaine Base did not qualify as a predicate offense because it occurred more than fifteen years previously. Id. at 35-37. At

---

[2] The Plea Agreement was signed by Petitioner and his counsel on September 13, 2021, but not entered with the Court until September 21, 1021. ECF No. 68.

[3] Throughout this Report and Recommendation, any cite to the page numbers of a document filed on the electronic docket is in reference to the page number designated at the top of each page automatically generated within CM/ECF and PACER.

[4] On November 15, 1999, Petitioner entered a plea of guilty to distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1). 3:99-CR-33, ECF Nos. 12, 13. On March 27, 2000, Petitioner was sentenced to 21 months, which was to be served concurrently with a probation revocation. 3:99-CR-33, ECF Nos. 15, 16.

[5] On July 11, 2005, Petitioner was convicted of both Unlawful Wounding and Domestic Battery Third Offense in Criminal Action Number 04-F-42 in the Berkeley County Circuit Court in Martinsburg, West Virginia. Id. at 15. On August 12, 2005, Petitioner was sentenced to one to five years imprisonment for his Unlawful Wounding conviction and one to five years imprisonment for his Domestic Battery Third Offense conviction, with the sentences to be served concurrently. Id.

2

the sentencing hearing, the Court overruled Petitioner's objections and found that Petitioner's prior conviction fell within the fifteen-year period to qualify as a predicate offense.[6] ECF No. 91 at 4-7. On March 7, 2022, the district court sentenced Petitioner to 151 months imprisonment (the low end of the guideline range for a career offender), followed by three years of supervised release.[7] ECF No. 85. Consistent with the waiver of his appellate rights in his plea agreement, Petitioner did not file a direct appeal.

### B.  Petitioner's § 2255 Motion

In his § 2255 Motion, Petitioner asserts four grounds of ineffective assistance of counsel related to his plea and sentencing.[8] ECF No. 104. On March 8, 2023, Petitioner filed a fifth "supplemental" ground which largely reiterates the same ineffective assistance

---

[6] "Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instance offense is counted" towards a career offender enhancement. U.S.S.G. § 4A1.2(e)(1). In this case, there was a revocation after the original sentence of incarceration and an additional revocation sentence was imposed. ECF No. 83 at 13, 35. Per the Fourth Circuit's instruction, the date of the defendant's last release following revocation, rather than date of the underlying conviction, commences the fifteen-year period in which the conviction could be counted as a predicate offense for career offender purposes. United States v. Clark, 267 Fed. App'x. 189, 190-91 (4th Cir. 2008). Petitioner was released from custody on January 28, 2003, after serving a total prison sentence of 27 months. ECF No. 83 at 13, 35. The fifteen-year period in which this prior conviction can be included under the career offender enhancement runs from January 28, 2003, to January 28, 2018. Id. at 35-36. Here, because Petitioner's relevant conduct for his March 7, 2022, conviction first commenced on October 6, 2017, Petitioner's prior conviction falls within the fifteen-year period by nearly four months. Id.

[7] Sentence was imposed on March 7, 2022, but the judgment was not entered or filed with the Clerk until March 8, 2022. ECF No. 85.

[8] **Ground One:** "Ineffective assistance in the plea process/ negotiation(s)" because "Counsel failed to challenge third degree felonies utilized as undue leverage." ECF No. 104 at 5.
**Ground Two:** "Counsel plea advice was erroneous" because "Counsel induced Carr to plead guilty on the assumption the priors may not qualify as career offender predicates without researching any supporting case law." Id. at 6.
**Ground Three:** "Counsel was ineffective at sentencing by not letting the record reflect the priors were suspect. Instead diverted the issue towards criminal history." Id. at 8.
**Ground Four:** "Counsel failed to investigate the facts of the case before making an informed opinion to plea" because "Counsel did not request any Shepard materials from the state court in order to apply a categorical and/or modified approach to determine if the state statute meets the federal definition." Id. at 9-10.

3

of counsel allegations in his § 2255 Motion related to both his plea and sentencing.[9] ECF No. 115. All of the grounds of ineffective assistance alleged by Petitioner are related to the career offender enhancement, and overlap in several respects. Accordingly, for organizational purposes and simplicity, the undersigned will condense this report and recommendation into two general grounds related to the career enhancement: (1) Counsel was ineffective during the plea negotiations stage, and (2) Counsel was ineffective at the sentencing hearing.[10]

First, Petitioner claims that Counsel was ineffective "in the plea process/negotiation(s)" because "Counsel failed to challenge" the predicate offenses and should have used Borden to bolster that challenge. ECF No. 104 at 5; ECF No. 115 at 1-3. Moreover, Petitioner also argues that "Counsel['s] plea advice was erroneous" because "Counsel induced Carr to plead guilty on the assumption the prior [convictions] may not qualify as career offender predicates without researching … case law" to support this theory. ECF No. 104 at 6. Petitioner similarly alleges that "Counsel failed to investigate the facts of the case before making an informed opinion to plea" because Counsel "did not request any Shepard Materials…" to determine if Petitioner's prior convictions fell under the career offender enhancement. Id. at 9-10.

Second, Petitioner contends that "Counsel was ineffective at sentencing" because Counsel failed to argue that Petitioner's prior convictions did not qualify for a career

---

[9] Petitioner's supplemental ground states that "Counsel failed to challenge the career offender enhancement during the plea process and at the sentencing hearing under United States v. Borden, 141 S. Ct. 1817 (2021)." ECF No. 115 at 1. Petitioner filed this supplemental ground after the Government filed their response to Petitioner's § 2255 Motion. However, because the basis of Petitioner's supplemental ground merely reiterates and expands upon the allegations made in his § 2255 Motion, the Court finds that a response from the Government is not necessary. The undersigned will address this supplemental ground in conjunction with Petitioner's § 2255 Motion.

[10] Counsel refers to J. Mark Sutton, Esq., who was retained by Petitioner for these proceedings.

4

offender status, and counsel should have used Borden as supporting authority. ECF No. 104 at 8; ECF No. 115 at 1-3.

The Government filed a Response on March 6, 2023, arguing that Petitioner failed to meet his burden under Strickland v. Washington, 466 U.S. 688 (1984) because he failed to identify evidence that Counsel's performance was deficient or otherwise prejudiced him. ECF No. 114 at 4 – 8. The Government essentially argues that Petitioner cannot demonstrate prejudice under Strickland for any of his grounds. Id. at 5-8.

Specifically, Respondent argues that Petitioner's four initial claims of ineffective assistance of counsel are without merit because: (1) ground one fails to allege with sufficient specificity facts to support his claim of ineffectiveness; (2) Petitioner's written plea agreement which he signed and about which he was questioned during his plea entry, demonstrate that he was advised of the possible consequences of his plea before he entered the same, including that the Petitioner's two prior felony offenses constituted valid predicate offenses for career offender status, and that the Government would recommend the minimum sentence of 151 months; (3) counsel objected to the use of Petitioner's 2000 conviction for career offender enhancement, but the Probation Office responded to that the 2000 conviction was properly used based on the date of Petitioner's release from his last period of imprisonment, and counsel argued that the circumstances of Petitioner's unlawful wounding conviction should be examined more closely; and (4) based on the Fourth Circuit's holding in United States v. Covington, 880 F.3d 129 (4th Cir. 2018), unlawful wounding under W.Va. Code § 61-2-9(a) is categorically a crime of violence under the Guidelines. Id.

Petitioner filed a Reply on April 5, 2023, arguing that while he was charged with Unlawful Wounding, he was only convicted of Domestic Battery Third Offense, which does not qualify as a "crime of violence" for the career offender enhancement, rendering Counsel ineffective for failing to research and raise the issue. ECF No. 119.

### III.   LEGAL STANDARD

#### A.   Pro Se Litigants

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

Section 1915(d)[11] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

Id. at 327.

---

[11] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

### B.     Motions to Vacate, Set Aside or Correct Sentence

A petitioner collaterally attacking his conviction or sentence under a 28 U.S.C. § 2255 motion must prove beyond a preponderance of the evidence: (1) that his sentence or conviction was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence exceeded the maximum authorized by law; or (4) that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255(a). If the petitioner satisfies that burden, the court may vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(b). If the "records of the case conclusively show that the prisoner is entitled to no relief," then the Court does not need to hold an evidentiary hearing. 28 U.S.C. § 2255(b). If "the petitioner is entitled to no relief, the court may summarily deny the motion." Beyle v. United States, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017).

## IV.     ANALYSIS

Petitioner argues that his Counsel was constitutionally ineffective at the plea and sentencing stages of his criminal proceedings and moves the Court to vacate his conviction and sentence. The Sixth Amendment guarantees criminal defendants effective assistance of counsel. Strickland v. Washington, 466 U.S. 688, 689 (1984). The Supreme Court established a two-prong test to determine whether counsel's assistance was constitutionally ineffective as to require reversal of a conviction or sentence. Id. at 687.

The first prong is the "performance" prong. Strickland, 466 U.S. at 687-88. Under this prong, the petitioner must demonstrate that "counsel's performance was deficient." Id. Performance is deficient when it falls below an objective standard of reasonableness, which is measured by "prevailing professional norms." Id. "[J]udicial scrutiny of counsel's performance must be highly deferential," as the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second prong is the "prejudice" prong. Id. at 687. Under this prong, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. For prejudice at the plea stage, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Under the two-prong Strickland test, "the petitioner must satisfy both prongs." Beyle, 269 F. Supp. 3d at 726. (internal quotations and citations omitted). If a petitioner

"cannot demonstrate the requisite prejudice, [then] a reviewing court need not consider the performance prong" and *vice versa*. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

### A. Ineffective Assistance During Plea Negotiations

Petitioner's § 2255 Motion, opening brief, supplemental pleading, and reply brief are replete with contradictions. Even when Petitioner's allegations are not at odds with each other, they are in direct contravention with his own statements on the record under oath.

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields, 956 F.2d at 1299. Rule 11 statements carry "a strong presumption of verity" which "present[s] a formidable barrier in any subsequent collateral proceedings." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted). "[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always … patently frivolous or false," and do not satisfy a petitioner's burden. Id. (internal quotations and citations omitted). As demonstrated below, all of Petitioner's allegations about Counsel's performance during the plea stage of his criminal proceedings directly contradict Petitioner's sworn statements made during the Rule 11 plea hearing.

Petitioner alleges that his Counsel "failed to explain the elements of the crime, the terms and conditions of the plea[,] and the plausible plea options." ECF No. 105-1 at 4. He said otherwise on September 21, 2021.

> THE COURT: Mr. Carr, … Do you believe that you've had adequate time to discuss your case fully with Mr. Sutton?

> THE DEFENDANT: Yes, sir.
> THE COURT: Has he been able to answer your questions about how best to proceed in this case?
> THE DEFENDANT: Yes, sir.
> THE COURT: Is there anything your lawyer has not done which you have asked him to do?
> THE DEFENDANT: No, sir.
> …
> THE COURT: Were each of the paragraphs of the plea agreement discussed with you prior to your reaching an agreement with the government?
> THE DEFENDANT: Yes, sir.
> …
> THE COURT: Mr. Carr, do you understand what this agreement does?
> THE DEFENDANT: Yes, sir.
> …
> THE COURT: Do you have any questions about your plea agreement?
> THE DEFENDANT: No, sir.

ECF No. 122 at 6, 12-13. Petitioner represented to the Court under oath that he understood the plea agreement and that Counsel discussed all of the paragraphs with him. See also Carmichael v. United States, 2014 WL 495437, at *5 (E.D.N.C Feb. 6, 2014) (finding that because the petitioner's § 2255 allegations contradicted his statements at the plea hearing that he had "reviewed all the terms of the plea agreement and discussed them with counsel," the petitioner failed to meet "his burden of showing that counsel was deficient in failing to explain" the terms of the agreement). The Court also reviewed the elements of the crime with Petitioner at the plea hearing before he entered a plea of guilty. ECF No. 122 at 16. The Court then asked Petitioner if he understood the elements of the charged statute, and Petitioner responded "yes, sir" and stated that he was guilty of the crime charged under those elements and definitions. Id. Accordingly, Petitioner cannot show prejudice as to Counsel's alleged failure to explain the elements because Petitioner agreed that his counsel had explained the elements to him before the Court again explained the elements to Petitioner before he ultimately pled guilty.

10

Moving on, Petitioner next alleges that his counsel advised him that he was not a career offender and that his guidelines would be 37 to 46 months. ECF No. 104-2 at 2; ECF No. 105-1 at 1. He claims that he entered into the plea agreement on the belief that he would receive a guideline range of 37 to 46 months and only learned the guidelines were 151 to 188 months after he pled guilty. ECF No. 104-2 at 2; ECF No. 105-1 at 1, 3. Petitioner further claims that he was induced to plead guilty on the assumption that his prior convictions may not qualify as career offender predicates without his Counsel researching case law. ECF No. 104 at 6. Petitioner similarly argues that "Counsel failed to investigate the facts of the case before making an informed opinion to plea" because Counsel "did not request any Shepard Materials…" to determine if Petitioner's prior convictions fell under the career offender enhancement. Id. at 9-10. Plaintiff states that had he known the guideline range was going to be 151 to 188 months, "he would have sought other plausible options or proceeded to trial." ECF No. 104-2 at 2; ECF No. 105-1 at 5. In other words, Petitioner argues that but for Counsel's erroneous advice, he would not have agreed to plead guilty. ECF No. 105-1 at 3. Petitioner concludes, that "[b]y attaching a career offender guideline, the guilty plea is not knowing, intelligent, or voluntary." ECF No. 105-1 at 5.

Despite these now asserted arguments, Petitioner signed a written plea agreement which contradicted all of his current claims. Further, Petitioner signed that agreement on September 13, 2021, eight days before he entered his plea in court, where all the plea terms were again reviewed. ECF Nos. 68, 120. When questioned under oath at the plea entry, Petitioner confirmed that he signed each of the six pages of the written agreement,

11

and that each paragraph of the plea agreement was discussed with his counsel before he entered the agreement:

> THE COURT: Mr. Carr, do you understand what this agreement does?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand what this agreement requires of you?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you have any questions about your plea agreement?
> THE DEFENDANT: No, sir.
> THE COURT: I'd like you to take a look at the plea agreement that was just handed to your attorney. First of all, sir, how many pages are in that plea agreement?
> THE DEFENDANT: Six.
> THE COURT: Down at the bottom of each page, there's a signature line that appears to bear your signature. Mr. Carr, is that your signature at the bottom of each page?
> THE DEFENDANT: Yes. Yes, sir.
> THE COURT: Were each of the paragraphs of the plea agreement discussed with you prior to your reaching an agreement with the government?
> THE DEFENDANT: I didn't understand the question, sir.
> THE COURT: Were each of the paragraphs of the plea agreement discussed with you prior to your reaching an agreement with the government?
> THE DEFENDANT: Yes, sir.

ECF No. 122 at 12 – 13.

Moreover, at the plea hearing, Petitioner made statements under oath that contradict the allegations in his § 2255 motion. He was also adequately informed by the Court of the possibilities and consequences of his guilty plea with regard to his potential sentence on September 21, 2021, after discussing the agreement with his Counsel, and signed the plea agreement in the presence of his counsel on September 13, 2021. Accordingly, Petitioner cannot show prejudice for his knowing and voluntary choice to enter a plea of guilty after being properly informed by both his counsel and the Court. Below are additional excerpts from the plea colloquy:

THE COURT: Have you had adequate time to consider the possible sentences that may be imposed upon your client?
MR. SUTTON: Yes, sir.

…

THE COURT: Have you and Mr. Sutton discussed the application of the U.S. Sentencing Guidelines to your case?
THE DEFENDANT: Yes, sir.

…

THE GOVERNMENT: According to paragraph number [7(C)], the United States will make the following nonbinding recommendations … the United States will recommend a sentence of 151 months' incarceration which is the low end of the guideline range for a career offender.

…

THE COURT: Do you understand that the Court will not be able to determine the applicable advisory guideline sentence for your case until after the presentence investigation report has been completed, and you and the government have had an opportunity to review it and to challenge the facts determined by the probation officer and the application of the guidelines recommended by the probation officer?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that the sentence imposed upon you by the Court may be different from any estimate Mr. Sutton may have given you or what you thought it would be?
THE DEFENDANT: Yes, sir.

…

THE COURT: Sir, do you understand that even if you do not like the sentence imposed upon you by the Court, you will still be bound by your plea and will have no right to withdraw it?
THE DEFENDANT: Yes, sir.

…

THE COURT: Have you discussed the statutory penalties that you are facing as a result of this charge?
THE DEFENDANT: Yes, sir.
THE COURT: Then you understand you expose yourself to a maximum penalty of imprisonment for a period of 20 years, a fine of $1,000,000, and a term of at least 3 years of supervised release?
THE DEFENDANT: Yes, sir.

…

THE COURT: Sir, has anyone promised you or told you something that is different from what I've told you today to get you to plead guilty?
THE DEFENDANT: No, sir.

…

THE COURT: Has anyone promised or predicted the exact sentence which will be imposed upon you in this matter?
THE DEFENDANT: No, sir.

>THE COURT: Do you understand that at this time, no one could know the exact sentence which will be imposed in your case?
>THE DEFENDANT: Yes, sir.
>THE COURT: Mr. Carr, have you been able to fully understand what is going on in these proceedings today?
>THE DEFENDANT: Yes, sir.
>…
>THE COURT: Are you acting voluntarily and of your own free will in entering this guilty plea?
>THE DEFENDANT: Yes, sir.

ECF No. 122 at 7, 9, 20, 22-24, 31-32.

Although Petitioner claims that Counsel induced him to plead guilty on the assumption that he would receive a guideline range of 37 to 46 months and did not know that the range would be 151 to 188 months, at his plea hearing Petitioner stated that he understood all of the terms of the plea agreement. Included in that agreement was paragraph 7(C), which states that the Government would make a non-binding recommendation for a 151-month sentence based on his career offender status. See ECF No. 68 at 2-3. Before officially entering his plea of guilty towards the end of the hearing and after extensive questioning by the Court, Petitioner was asked whether he still wished to plead guilty. He responded "Yes, sir." ECF No. 122 at 30. Moments later Petitioner was asked if he had any questions or second thoughts about entering a plea of guilty to the charge, to which he responded, "No, sir." Id. at 32. Petitioner was aware of the risk that he could be facing a sentence of 151 months imprisonment as a career offender or even the maximum penalty of twenty years (240 months).

Petitioner cannot now claim that he was "induced" to plead guilty when he possessed all of the facts he needed to make an informed, knowing, and voluntary decision. Weighing the risk of a career offender designation for pleading guilty to one count, against the risk of going to trial and facing seven potential felony convictions (each

14

with a maximum penalty of twenty years imprisonment), and the risk of still being designated as a career offender, the Court is not convinced that there is a reasonable probability that Petitioner would have decided to proceed to trial under these facts. And as discussed previously, Petitioner's reasoning for why he would have gone to trial is contradicted by the record, which shows Petitioner was aware that the Government was anticipating a career offender enhancement and planned to recommend a low-end guideline sentence of 151 months. Accordingly, Petitioner's claims are meritless as they are directly contradicted by Petitioner's signature on the written plea agreement and his statements under oath at the plea hearing. Petitioner has not met his evidentiary burden of showing his counsel's performance was deficient as alleged in grounds 2, 4, and 5, of the motion to vacate, and that he was prejudiced by his counsel's performance at the plea stage.[12]

### B. Ineffective Assistance During Sentencing

Petitioner contends in grounds 1, 3, and 5, that Counsel was ineffective because he failed to argue that Petitioner's prior convictions did not qualify for career offender status during the sentencing hearing. ECF No. 104 at 8; ECF No. 115 at 1. As mentioned in the procedural history above, Counsel objected to the use of the 2000 federal drug distribution conviction as a predicate offense on grounds that it was beyond the fifteen-year time period, but the district court correctly overruled that objection at the sentencing

---

[12] Petitioner also seems to argue that his prior convictions were "utilized as undue leverage" during plea negotiations and had his Counsel informally challenged those convictions with the Government during negotiations, then perhaps he could have received a more favorable deal. ECF No. 104 at 5; ECF No. 105-1 at 2. As discussed in section IV.B., any challenges made by Counsel regarding Petitioner's predicate offenses would have been unsuccessful whether as a negotiation tactic during plea discussions or as an argument at sentencing. Accordingly, Petitioner cannot demonstrate the requisite prejudice on this argument either. See infra.

hearing. See supra Footnote 4. This predicate offense, however, is not being challenged by Petitioner.

Rather, Petitioner contends that his Unlawful Wounding conviction should not be used as a predicate offense because he alleges that he was never convicted of Unlawful Wounding and that his Domestic Battery Third Offense conviction does not qualify as a crime of violence for purposes of the career offender enhancement under Borden.[13] ECF No. 119 at 2. Plaintiff avers that Counsel was ineffective for failing to raise this issue before the Court at sentencing. Id. The record reflects, however, that Petitioner was indeed convicted of Unlawful Wounding on July 11, 2005, in the Berkeley County Circuit Court seated in Martinsburg, West Virginia in Criminal Action Number 04-F-42.[14] ECF No. 83 at 8, 15. The Fourth Circuit has held that the West Virginia offense of Unlawful Wounding constitutes a crime of violence under the sentencing guidelines and thus qualifies as a predicate offense for the career offender enhancement. See United States v. Covington, 880 F. 3d 129, 135 (4th Cir. 2018) ("The Court concludes, based on the text of the statute . . . that the crime of unlawful wounding under W.Va. Code § 61-2-9(a), is categorically a crime of violence under the Guidelines.").

To qualify as a career offender, Petitioner needed to have "two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).[15] His Unlawful Wounding felony conviction is categorically a crime of violence

---

[13] In Borden, the Supreme Court held that a criminal offense that requires only a mens rea of recklessness cannot count as a "violent felony" under the Armed Career Criminal Act. 141 S. Ct. at 1834. Borden did not address the career offender enhancement under § 4B1.1 of the sentencing guidelines.

[14] Probation produced, and the undersigned reviewed, the August 12, 2005, sentencing order written by Judge Christopher Wilkes, which further confirms Petitioner was convicted of Unlawful Wounding.

[15] "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that

under Fourth Circuit precedent in Covington and his § 841(a)(1) Distribution of Cocaine Base felony conviction is a controlled substance offense. See United States v. Whitley, 737 F. App'x 147, 149 (4th Cir. 2018) (noting that distribution of cocaine base qualifies as a controlled substance offense for purposes of the career offender enhancement). In short, Petitioner's argument related to whether a Domestic Battery Third Offense conviction is a crime of violence under Borden is irrelevant and inconsequential.

Plaintiff cannot demonstrate the requisite prejudice under Strickland because had Counsel further challenged Petitioner's prior convictions at sentencing, he would not have succeeded. Petitioner would still have been designated as a career offender by the Court. Instead, Counsel reasonably and strategically focused the Court's attention elsewhere during the sentencing hearing. See Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (finding that "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons…" and is not ineffective for choosing to do so).

In sum, Petitioner has failed to meet his burden under Strickland as to grounds 1, 3, and 5, of his motion to vacate, and the motion should be summarily denied.

## V.     RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person

---

is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A controlled substance offense is defined in § 4B1.2(b) as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the…distribution, or dispensing of a controlled substance." In this case, Petitioner was over eighteen years old at the time he committed his instant felony conviction for Distribution of Fentanyl and Heroin in violation of 21 U.S.C § 841(a)(1), which is a controlled substance offense. See Johnson v. United States, No. 3:14-CR-39, 2018 WL 4677860, at *6 (N.D.W. Va. Apr. 6, 2018) (holding that Distribution of Heroin in violation of 21 U.S.C. § 841(a)(1) is a felony controlled substance offense for purposes of the career offender enhancement).

17

in Federal Custody [ECF No. 1 in 3:22-CV-207; ECF No. 98 in 3:20-CR-43-1] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** Fed.R.Civ.P. 72(b)(2). A copy of such objections should also be submitted to the United States District Judge Gina M. Groh. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). See Wall v. Rasnick, 42 F.4th 214, 218 – 219 (4th Cir. 2022).

Because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge's association with this case.

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral

18

from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

**DATED:**     July 28, 2023

*[signature: Robert W. Trumble]*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE